## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | Criminal No. 18- |
| | : | |
| v. | : | VIOLATION: |
| | : | 18 U.S.C. § 201 |
| **ALBERT POAWUI,** | : | (Bribery) |
| | : | |
| **Defendant.** | : | FORFEITURE: |
| | : | 18 U.S.C. § 981(a)(1)(C); 28 U.S.C. |
| | : | § 2461(c); 21 U.S.C. § 853(p) |

## INFORMATION

The United States charges that:

### General Allegations

1.   Unless stated otherwise, the relevant time period for this Information spans from in or about August 2015 through in or about December 2017.

### Atius Technology Institute and Its Employees

2.   Atius Technology Institute ("Atius") was a privately owned, non-accredited school specializing in information technology courses. Atius was registered to do business in the State of Maryland and the Commonwealth of Virginia. Atius had two campuses, one located at an office building at 4715 Sellman Road, Suite G, Beltsville, Maryland, and the other located at an office building at 6320 Augusta Drive, Twelfth Floor, Springfield, Virginia, which opened in or about March 2017.

3.   At all relevant times the defendant, Albert Poawui ("POAWUI"), was a co-owner or sole owner of Atius, and controlled all of its finances and operations. When Atius was first incorporated in or about 2014, POAWUI shared ownership of Atius with two other individuals. POAWUI became the sole owner of Atius in or about October 2016.

1

4.      Beginning in or about October 2016, ATIUS EMPLOYEE 2 was employed full-time by Atius as its Program Manager. In his capacity as Program Manager, ATIUS EMPLOYEE 2 was responsible for managing Atius's student enrollment, curriculum, and its correspondence with the United States Department of Veterans Affairs ("VA").

5.      Beginning in or about October 2016, ATIUS EMPLOYEE 3 was employed full-time by Atius as its Financial Manager. In her capacity as Financial Manager, ATIUS EMPLOYEE 3 was responsible for managing all of Atius's finances. As the Financial Manager, ATIUS EMPLOYEE 3 helped to facilitate the transaction through which POAWUI became the sole owner of Atius, and subsequently became a registered agent for the corporation.

6.      Atius employed up to six individuals full-time and up to approximately twenty individuals part-time at any given time. The full-time employees included ATIUS EMPLOYEE 2, ATIUS EMPLOYEE 3, and office managers. The part-time employees included instructors and recruiters, among other individuals. POAWUI supervised all of Atius's full-time employees, each of whom was required to report directly to POAWUI. POAWUI supervised Atius's part-time employees either directly or indirectly. POAWUI determined all Atius employees' job descriptions, salaries, benefits, and work schedules.

**Vocational Rehabilitation and Employment Program and Its Employees**

7.      At all relevant times the VA was an agency of the United States Government.

8.      At all relevant times the Vocational Rehabilitation and Employment ("VR&E") program was authorized by Congress under Title 38, United States Code, Chapter 31. The VR&E program provided eligible veterans with services and assistance necessary to enable them to achieve maximum independence in daily living and to obtain and maintain suitable employment. VR&E program benefits were available to veterans who served in the military after September 16,

1940, and did not receive a dishonorable discharge. In order to qualify for these benefits a veteran must have had a service-connected disability and a serious employment handicap requiring rehabilitation.

9. One type of service offered to qualifying veterans by the VR&E program was educational and vocational training. In cases where educational and vocational training was determined to be necessary for the veteran to accomplish the purposes of the rehabilitation program, the VA paid for tuition, books, supplies, equipment, and other educational costs and fees. The VA paid tuition and fees directly to the school on the enrolled veteran's behalf, and sometimes also paid the school directly for an enrolled veteran's books, supplies, and equipment. Veterans participating in the VR&E program received a subsistence allowance while they pursued an education or training program. The subsistence allowance was a monthly payment calculated based on the rate of attendance in a training program (full-time, three-quarter-time, or half-time), the number of dependents, and the type of training.

10. Atius became an approved VR&E program vendor in or about May 2015.

11. Each VR&E program vendor that received tuition payments from the VA was required to designate a School Certifying Official. School Certifying Officials certified the accuracy of information submitted for purposes of payment by the vendor to the VA. For example, school vendors such as Atius submitted VA Form 28-1905s to certify that veteran students were enrolled in specified classes for specified class hours during specified dates. POAWUI was Atius's primary School Certifying Official from in or about May 2015 until on or about February 27, 2017, at which time he delegated this role to ATIUS EMPLOYEE 2. As School Certifying Officials, POAWUI and ATIUS EMPLOYEE 2 also submitted to the VA invoices reflecting veterans'

course schedules, course tuition, and the costs of equipment and supplies that Atius purported to purchase for veterans.

12. PUBLIC OFFICIAL 1 was a VR&E program counselor employed by the VA. VR&E program counselors such as PUBLIC OFFICIAL 1 were responsible for providing rehabilitation and counseling services to veterans. These services included comprehensive evaluations, entitlement determinations, educational counseling, vocational counseling, rehabilitation planning, job placement, and case management. Each counselor was assigned to a certain number of educational institutions. PUBLIC OFFICIAL 1 was assigned to Atius. As part of PUBLIC OFFICIAL 1's duties as a VR&E program counselor, PUBLIC OFFICIAL 1 reviewed invoices submitted by Atius and had the authority to approve or deny invoices. PUBLIC OFFICIAL 1 was also responsible for advising veterans under his supervision which school they should attend.

13. PUBLIC OFFICIAL 2 was a VR&E program counselor employed by the VA. When PUBLIC OFFICIAL 1 was not in the office, or when he was otherwise unable to facilitate paperwork needed for the VA to pay Atius, PUBLIC OFFICIAL 2 completed and transmitted such paperwork so that Atius would be paid by the VA. PUBLIC OFFICIAL 2 also referred some students under her supervision to Atius. PUBLIC OFFICIAL 2 did so knowing of the below-described illicit bribery agreement between POAWUI and PUBLIC OFFICIAL 1.

14. VETERAN 1 was a veteran enrolled in the VR&E program. PUBLIC OFFICIAL 1 supervised VETERAN 1 in PUBLIC OFFICIAL 1's capacity as a VR&E program counselor. As further described below, VETERAN 1 served as PUBLIC OFFICIAL 1's personal assistant for purposes of the scheme.

## The Scheme to Commit Bribery and Defraud the VA

15.     In or about August 2015, POAWUI and PUBLIC OFFICAL 1 agreed to commit bribery and to defraud the VA in order to enrich themselves. POAWUI and PUBLIC OFFICIAL 1 agreed that POAWUI would pay—and POAWUI did in fact later pay—PUBLIC OFFICIAL 1 a 7% cash kickback of all payments made by the VA to Atius in exchange for PUBLIC OFFICIAL 1 taking official acts to cause the VA to pay Atius. POAWUI and PUBLIC OFFICIAL 1 agreed that the bribe payments should be made in cash to hide them from the Internal Revenue Service and to keep their scheme a secret.

16.     Under their agreement, PUBLIC OFFICAL 1's primary role in the scheme was to act in his official capacity to steer VR&E program veterans—both those directly under his supervision and those under the supervision of other VR&E program counselors, including PUBLIC OFFICIAL 2—to Atius, and to approve Atius's invoices for payment. For his part, to maximize the scheme's profits, POAWUI sent and caused to be sent course schedules, invoices, and other information to PUBLIC OFFICIAL 1 and other VA employees, including PUBLIC OFFICIAL 2, that inflated the amount of time that students were attending Atius. PUBLIC OFFICIAL 1, and occasionally PUBLIC OFFICIAL 2, approved these documents without regard for their accuracy in order to maximize the profit that POAWUI and PUBLIC OFFICIAL 1 made from the scheme.

17.     Between on or about September 15, 2015, and on or about May 5, 2017, the VA paid Atius approximately $2,217,259.44 for tuition, equipment, and supplies for veterans enrolled at Atius. The majority of these students were assigned to PUBLIC OFFICIAL 1 and enrolled at Atius at PUBLIC OFFICIAL 1's direction.   A small minority of these students were assigned to other VR&E program counselors, such as PUBLIC OFFICIAL 2, but enrolled at Atius at PUBLIC

OFFICAL 1's urging, direction, or instruction in PUBLIC OFFICIAL 1's official capacity. PUBLIC OFFICIAL 1 solicited and received from POAWUI a 7% share of the VA's payments to Atius irrespective of whether the payment was made for a veteran officially assigned to PUBLIC OFFICIAL 1 or another VR&E program counselor.

18. From in or about August 2015 to in or about December 2017, in exchange for PUBLIC OFFICIAL 1's official acts and in furtherance of their scheme to commit bribery and defraud the VA, POAWUI paid PUBLIC OFFICIAL 1 approximately $155,208.16. These payments were made in cash and were hand-delivered to PUBLIC OFFICIAL 1 or VETERAN 1 by POAWUI or ATIUS EMPLOYEE 3. POAWUI and ATIUS EMPLOYEE 3 delivered these payments, and PUBLIC OFFICIAL 1 and VETERAN 1 received these payments, knowing that the payments were bribes pursuant to POAWUI and PUBLIC OFFICIAL 1's illicit agreement.

**Misrepresentations in Furtherance of the Scheme to Commit Bribery and Defraud the VA**

19. To further their scheme and keep it a secret, POAWUI and ATIUS EMPLOYEE 2 knowingly made false representations on documents submitted to the VA. The documents described below were sent by POAWUI and ATIUS EMPLOYEE 2 via email to PUBLIC OFFICIAL 1, PUBLIC OFFICIAL 2, other VR&E program counselors, and/or a VR&E centralized mailbox that was used to receive electronic invoices from VR&E program vendors. For example:

a. POAWUI and ATIUS EMPLOYEE 2 certified on VA Form 28-1905s that veterans attending Atius were enrolled in between 18 and 32 hours of class per week when in fact both POAWUI and ATIUS EMPLOYEE 2 knew that Atius only offered a maximum of six hours of class per week for the courses listed on the forms. POAWUI and ATIUS EMPLOYEE 2 made these false representations to obtain a "full-time" designation for these veteran students, thereby

fraudulently increasing the amount of money that Atius could charge the VA for each veteran student.

b. Similarly, POAWUI and ATIUS EMPLOYEE 2 submitted class schedules to the VA that included dates and times during which classes were not offered at all.

c. ATIUS EMPLOYEE 2, sometimes at POAWUI's direction, submitted to the VA "Certificates of Completion" for veterans who had not completed the courses listed on the certificates.

d. After the VA initiated an administrative audit of Atius following complaints by veterans, and in advance of a site visit by VA personnel the following week, ATIUS EMPLOYEE 2—at POAWUI and PUBLIC OFFICIAL 1's direction—emailed PUBLIC OFFICIAL 1 on October 11, 2017, stating that Atius would no longer offer day classes, even though POAWUI, ATIUS EMPLOYEE 2, and PUBLIC OFFICIAL 1 knew that Atius never offered day classes in the first place. The purpose of this email was to conceal the truth about material misrepresentations that POAWUI and ATIUS EMPLOYEE 2 had previously made to the VA concerning Atius course schedules, and to ensure the continued approvals of Atius's invoices.

20. Of the $2,217,259.44 paid by the VA to Atius for veterans' education after POAWUI and PUBLIC OFFICIAL 1 entered their illicit agreement, Atius spent not more than approximately $715,953.77 on legitimate business expenses related to educating veterans. POAWUI used the remaining $1,501,305.67 to pay bribes to PUBLIC OFFICIAL 1 and advance his own personal and unrelated business interests.

## COUNT ONE
(Bribery – 18 U.S.C. § 201(b)(1))

21. The allegations set forth in paragraphs one through twenty of this Information are incorporated by reference as if fully stated herein.

22.   From in or about August 2015 and continuing through in or about December 2017, in the District of Columbia, and elsewhere, the defendant,

**ALBERT POAWUI,**

did, directly and indirectly, corruptly give, offer, and promise a thing of value to a public official, to influence any official act, to influence such public official to commit and aid in committing, and to collude in, and allow, any fraud, and to make opportunity for the commission of any fraud on the United States; that is, POAWUI gave PUBLIC OFFICIAL 1 cash money in exchange for PUBLIC OFFICIAL 1's performance of official acts favorable to Atius and POAWUI, as described in paragraphs fifteen to eighteen, and for PUBLIC OFFICIAL 1's aid in committing a fraud on the VA, as described in paragraphs nineteen and twenty.

(All in violation of Title 18, United States Code, Section 201(b)(1))

### FORFEITURE ALLEGATION

23.   Upon conviction of the offense alleged in Count One, the defendant shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to this offense, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c). The United States will also seek a forfeiture money judgment against the defendant in the amount of $1,501,305.67.

24.   If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendant:

    a.   cannot be located upon the exercise of due diligence;

    b.   has been transferred or sold to, or deposited with, a third party;

    c.   has been placed beyond he jurisdiction of the Court;

    d.   has been substantially diminished in value; or

   e. has been commingled with other property that cannot be divided without difficulty;

the defendant shall forfeit to the United States any other property of the defendant, up to the value described above, pursuant to Title 21, United States Code, Section 853(p).

**(Criminal Forfeiture**, pursuant to Title 18, United States Code, Section 981(a)(1)(C), Title 28, United States Code, Section 2461(c), and Title 21, United States Code, Section 853(p))

JESSIE K. LIU
United States Attorney
For the District of Columbia

By: _____
Sonali D. Patel
Assistant United States Attorney

ANNALOU TIROL
Acting Chief, Public Integrity Section

By: _____
Simon J. Cataldo
Trial Attorney